UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EDMEE CALVO
RODRIGUEZ,

Plaintiff,

vs.

Case No.
6:24-cv-230-GAP-RMN

FLORIDA ARTHRITIS
CENTER, P.L.,

Defendant.

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Renewed Motion for Entry of Default Judgment (Dkt. 26), filed December 5, 2024 ("Motion"). The Motion has been referred to me for the preparation of a report and recommendation. Upon consideration, I respectfully recommend the Court grant the Motion.

## I.  BACKGROUND

On January 31, 2024, Plaintiff filed a four-count Complaint against Defendant Florida Arthritis Center, P.L. for handicap discrimination and retaliation under the Americans with Disabilities Amendments Act ("ADAAA") and the Florida Civil Rights Act ("FCRA"). Dkt. 1. Defendant was served with the Complaint on

April 22, 2024. Dkt. 12-1. Defendant failed to timely respond and, as a result, the Clerk of Court entered default on June 7, 2024. Dkt. 18. On June 11, 2024, Plaintiff moved for entry of final default judgment. Dkt. 19.

Later, on November 19, 2024, the Court denied Plaintiff's request for final default judgment because the Complaint did not provide sufficient factual allegations to support the elements required for each of her claims. Dkt. 23. Plaintiff filed a two-count Amended Complaint on December 2, 2024, which removed the retaliation claims but kept the two discrimination claims. Dkt. 25. On December 5, 2024, Plaintiff filed her Renewed Motion for Entry of Default Judgment and Request for Hearing. Dkt. 26.

On April 9, 2025, the Court took the default judgment portion of the Motion under advisement and granted Plaintiff's request for a hearing on damages. Dkt. 27. The damages hearing was held on May 8, 2025. Dkt. 34. The Motion is ripe for review.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules, the Clerk may enter default. Fed. R. Civ. P. 55(a). Second, after obtaining a clerk's default, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Before entering default judgment, the Court must ensure that it has jurisdiction over the claims and parties, and that the well-

pled factual allegations, which are assumed to be true, adequately state a claim for which relief may be granted. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] If default judgment is warranted, then the Court must next consider whether the plaintiff is entitled to the relief requested. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See* Fed. R. Civ. P. 54(c).

## III.   ANALYSIS

### A.   Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves a federal question. This Court has personal jurisdiction over Florida Arthritis Center, P.L. because it is a Florida business entity doing business in the state of Florida. Edmee Calvo Rodriguez is a citizen and resident of this District. *See* Dkt. 25.

### B.   The Entry of Default

Plaintiff properly served Defendant by serving an employee of its registered agent on April 22, 2024. Dkt. 12-1; Fed. R. Civ. P. 4(h); Fla. Stat. § 48.091(4). Defendant did not appear, and no responsive pleading was ever filed. The Clerk of Court entered clerk's default on June 7, 2024. Dkt. 18.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Then, Plaintiff filed an Amended Complaint on December 12, 2024. Dkt. 12. Plaintiff was not required to serve the Amended Complaint on Defendant because the changes in the Amended Complaint were not substantial. *Compare* Dkt. 1, *with* Dkt. 25; *see* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."); *ColVisTec AG v. Equitech Int'l Corp*, No. 2:18-cv-783, 2019 WL 1531898, at *1 (M.D. Fla. Apr. 9, 2019) ("Where changes made in an amended complaint are not substantial, the requirement that a pleading stating a new claim for relief against a party in default must be served on that party is not applicable."). Defendant still did not appear, and no responsive pleading was ever filed. The Clerk of Court entered clerk's default on April 9, 2025. Dkt. 28.

## C.    Entitlement to Default Judgment

To be entitled to default judgment, Plaintiff must address the elements of each cause of action and specify which well-pled facts in the Amended Complaint satisfy each of those elements. Plaintiff seeks default judgment on two counts of disability/handicap discrimination under the ADAAA[2] and FCRA. *See* Dkt. 25.

---

[2] The Court notes that because the alleged discrimination occurred after January 1, 2009, the ADAAA applies. 42 U.S.C. § 12112. The ADAAA amended the ADA to promulgate a more liberal standard of the term "disabled" but did not change the elements of a plaintiff's

As an initial matter, discrimination under the FCRA is analyzed under the same framework as the ADA and so I will analyze the two counts together. *Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1263–64 (11th Cir. 2007). I will first discuss administrative remedies and then turn to the Plaintiff's claims.

### 1.    Administrative Remedies

To litigate a claim for discrimination under the ADA or FCRA, a plaintiff must first exhaust her administrative remedies by filing a charge of discrimination and a charge of retaliation with the Equal Employment Opportunity Commission ("EEOC") or the appropriate agency. *See Henderson v. Salvation Army*, No. 1:20-cv-5144, 2022 WL 22329131, at *8 (N.D. Ga. July 12, 2022) (the "administrative exhaustion requirement . . . applies to ADA claims."), *report and recommendation adopted*, No. 1:20-cv-5144, 2022 WL 22329145 (N.D. Ga. Aug. 8, 2022); *Jones v. Bank of Am.*, 985 F. Supp. 2d 1320, 1325 (M.D. Fla. 2013) ("As a jurisdictional prerequisite to filing an FCRA action, a plaintiff must exhaust her administrative remedies by filing a timely charge with the appropriate agency.").

Plaintiff provides that she "has timely brought this Complaint within all applicable statutes of limitations and satisfied all conditions precedent to the institution of this lawsuit." Dkt. 25 ¶ 35.

---

*prima facie* case of discrimination. *See Barlow v. Walgreen Co.*, No. 8:11-cv-71, 2012 WL 868807, at *4 (M.D. Fla. Mar. 14, 2012).

Though Plaintiff has not specifically alleged that she filed a charge with the EEOC or the appropriate agency nor attached such charges to the Amended Complaint, in this Circuit pleading conditions precedent generally is sufficient. *See Drew v. Amazon.com Servs., LLC*, No. 8:23-cv-2326, 2024 WL 3426853, at *2 (M.D. Fla. July 15, 2024) (citing *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982).

### 2.    Plaintiff's Claims

Turning to Plaintiff's claims, she alleges that Defendant discriminated against her in violation of the ADAAA and FCRA. *See* Dkt. 25 ¶¶ 36–38 (Count I – Disability Discrimination Under ADAAA), ¶¶ 39–41 (Count II – Handicap Discrimination Under FCRA). Under the ADA, no employer "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim for disability discrimination, Plaintiff must show that (1) she is disabled, (2) is a qualified individual, and (3) was unlawfully discriminated against because of her disability. *Barlow*, 2012 WL 868807, at *4 (citing *Greenberg*, 498 F.3d at 1263). I will address each element in turn.

### a.    Disability

Plaintiff must show that she is disabled. Disability is defined as "(A) a physical or mental impairment that substantially limits one

or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). By way of default Defendant admits to all the allegations in the Amended Complaint, but Plaintiff must still provide sufficient factual allegations to support each claim. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir.2006) ("a default is an admission of all well-pleaded allegations against the defaulting party"). Plaintiff alleges that she "had a handicap and disability or was perceived by Defendant as having a handicap and disability." Dkt. 25 ¶ 7. Based on that allegation, it appears Plaintiff is arguing that she is disabled under all three definitions of disability—she is actually disabled, has a record of being disabled, and Defendant regarded her as disabled.

Under the "actual" or "record" prongs of the definition, merely having a physical or mental impairment is insufficient to be considered disabled; "the other half of the definition requires that the impairment substantially limit one or more of [the plaintiff's] major life activities." *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1155–57 (11th Cir. 2005); *see also* 29 C.F.R. § 1630.2(g), (j). A plaintiff satisfies the "regarded as" prong "if the individual establishes that he or she has been subjected to [a prohibited adverse employment action] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," so long as the impairment is

not "transitory and minor" in nature. 42 U.S.C. § 12102(3)(A)-(B); 29 C.F.R. § 1630.2(g)(1)(iii), (j)(2). The United States Code directs the definition of disability to be construed broadly, and the Code of Federal Regulations enumerates a non-exhaustive list of physical and mental impairments that qualify as disabilities. 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.2(h). "Major life activities" include the activities of "[c]aring for oneself, performing manual tasks . . . walking, standing, lifting, . . . breathing, . . . and working." 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i)(1)(i).

Plaintiff provides sufficient factual allegations to support that she is disabled. In the Complaint, she provided that "[s]pecifically, Plaintiff had or was perceived as having a disability related to her ongoing non-transitory heart and related conditions." Dkt. 25 ¶ 8. She has suffered a heart attack, a stroke, and has had two stents placed in her heart. *Id.* ¶¶ 9–11. She adds that "[f]or many years, Plaintiff's heart condition caused her to suffer difficulties walking, physically exerting herself for long periods of time, shortness of breath, and chest pain." *Id.* ¶ 12. Plaintiff further alleges that she takes nine medications to treat her condition. *Id.* ¶ 21. Plaintiff also provides allegations that Defendant was aware of her condition. *Id.* ¶¶ 18–19. When she returned to work after two and a half days in the hospital, she brought a doctor's note, and then her manager directly asked her why she was in the hospital and Plaintiff responded that it was regarding her ongoing heart condition. *Id.* Those allegations together establish that Defendant had actual knowledge of Plaintiff's

condition and perceived her as disabled. *See Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996) ("[A] plaintiff must demonstrate that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled.").

Thus, I find that Plaintiff has established that she is disabled.

### b.    Qualified Individual

Plaintiff must also show that she is a qualified individual. A qualified individual is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Plaintiff provides sufficient factual allegations to support that she is a qualified individual. Plaintiff alleges that "[a]t the time of Plaintiff's hiring by Defendant for the referral specialist job in October 2022, Plaintiff could and did perform the essential functions of the position with or without the need for a reasonable accommodation." Dkt. 25 ¶ 16. She provides that "[d]espite her ongoing medical struggles, Plaintiff was qualified to perform the essential functions of her position—a referral specialist—for Defendant with or without reasonable accommodations." *Id.* ¶ 13. She adds that "[a]lthough she had difficulty walking and breathing, Plaintiff was still able to do her job as a referral specialist because such job did not demand high physical endurance." *Id.* ¶ 14.

Thus, I find that Plaintiff has shown she is a qualified individual.

### c.    Unlawfully Discriminated Against

As to the third and last element, Plaintiff must show that a covered entity discriminated against her on account of her disability. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). An employer is considered a covered entity, and discrimination includes discharging an employee based on her disability. 42 U.S.C. §§ 12111(2), 12112(a).

Plaintiff provides sufficient factual allegations to support that Defendant discriminated against her based on her disability. Plaintiff alleges that Defendant hired her as a referral specialist and so Defendant was her employer. Dkt. 25 ¶ 16. She adds that when she returned to work after being in the hospital for her condition, she was asked by her manager why she was in the hospital and her manager commented on the amount of medications Plaintiff had with her. *Id.* ¶¶ 19–20. Plaintiff's manager stopped checking in on Plaintiff after that interaction when prior, Plaintiff's manager would check in multiple times a day and would regularly praise Plaintiff's performance. *Id.* ¶¶ 21–24. Plaintiff provides that "[j]ust a few days after her return to work, on or about January 30, 2023, Plaintiff was terminated by Defendant." *Id.* ¶ 26. She adds that "[i]n the absence of a legitimate non-discriminatory reason for the termination plus the abrupt change in Defendant's treatment of Plaintiff at work upon her return from the hospital and the subsequent sudden termination

after having been previously praised for her performance before the hospitalization, Defendant's termination of Plaintiff was discriminatory." *Id.* ¶ 30.

Thus, I find that Plaintiff has shown she was unlawfully discriminated against based on her disability.

\* \* \* \* \*

In sum, Plaintiff has provided sufficient factual allegations to support her two claims for disability discrimination, and I find that she is entitled to default judgment in her favor and against Defendant. *See Orrand v. TCF Elec., LLC*, No. 8:23-cv-2338, 2024 WL 3640454, at \*2–3 (M.D. Fla. July 9, 2024) (recommending granting default judgment in disability discrimination case under the ADA and FCRA where all three elements were met), *report and recommendation adopted*, No. 8:23-cv-2338, 2024 WL 3638001 (M.D. Fla. Aug. 2, 2024).

### D.    Damages

Next, I will determine whether Plaintiff is entitled to damages. The Court must ensure there is a legitimate basis for the damages award requested. *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). If the damages sought are not a "liquated sum or one capable of mathematical calculation," then the Court must conduct a hearing. *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543 (11th Cir. 1985).

I held a hearing on May 8, 2025. Dkt. 34. The transcript of that hearing is incorporated in this report by reference. Plaintiff testified at the hearing, and I find her testimony credible. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) ("Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."). Plaintiff seeks economic compensatory damages, non-economic compensatory damages, and punitive damages—all of which are available under the ADA and FCRA. *See* 42 U.S.C. § 12117(a) (applying remedies and procedures of Title VII to ADA); 42 U.S.C. § 1981a(a)–(b) (listing compensatory and punitive damages are recoverable); Fla. Stat. § 760.11(5) (same). I will address request each in turn.

### 1.    Economic Compensatory Damages

Starting with economic compensatory damages, Plaintiff requests lost wages—also known as back pay—in the amount of $14,687.50. Dkt. 30 at 4–5; Dkt. 30-1. At the hearing, Plaintiff's counsel explained that in lieu of live testimony, Plaintiff is relying on the Hearing Brief she filed—which includes her argument and an affidavit in support of the amount sought. Dkts. 30 (brief), 30-1 (affidavit). Plaintiff's affidavit is sufficient evidence to calculate her economic compensatory damages. *Cf. Wallace v. The Kiwi Grp.*, 247 F.R.D. 679, 682 (M.D. Fla. 2008) (finding plaintiffs' affidavits sufficient evidence for calculating FLSA damages).

Once discrimination is proved under the ADA, a plaintiff is "presumptively entitled to back pay." *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1472 (11th Cir. 1985). 42 U.S.C. § 2000e-5 authorizes "recovery of back pay for up to two years preceding the filing of the charge[.]" 42 U.S.C. § 2000e-5(e)(3)(B); *see also* 42 U.S.C. § 12117(a) (adopting § 2000e-5's enforcement mechanisms as those for the ADA). "[A]n award of back pay is intended to make the claimant whole, not to confer a windfall." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1378 (S.D. Fla. 1998). To calculate a back pay award, "the trial court must determine what the employee would have earned had she not been the victim of discrimination, and must subtract from this figure the amount of actual interim earnings." *Id.* Back pay is generally calculated from the date of the adverse employment action until the date of judgment. *Id.* at 1377; *see also Sublett v. Landshark Grp., Inc.,* No. 1:20-cv-128, 2021 WL 5055074, at *10 (N.D. Fla. Aug. 26, 2021) ("Back pay is calculated by taking the employee's rate of pay at discharge and applying it to the amount of time she was unable to secure other, or adequate employment, without taking into account any taxes, unemployment benefits or social security benefits."), *report & recommendation adopted*, 2021 WL 5052729 (N.D. Fla. Nov. 1, 2021).

As an equitable remedy, back pay is subject to a good-faith effort to mitigate damages. *Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1310 (S.D. Fla. 2004), *aff'd*, 183 F. App'x 872 (11th Cir. 2006). Thus, a plaintiff must mitigate damages "by

seeking employment 'substantially equivalent' to the position she was denied." *Joe's Stone Crab*, 15 F. Supp. 2d at 1378 (quoting *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991)). Finally, the court will "resolve uncertainties in back pay in favor of the discrimination victim." *Lathem v. Dep't of Child. & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999) (citing *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 260–61 (5th Cir. 1974)).

From October 2022 to the end of January 2023, Plaintiff worked for Defendant as a referral specialist at the hourly rate of $18 for around 40-hours per week. Dkt. 30-1 ¶¶ 3–5. After her termination, Plaintiff was unemployed from January 30, 2023 to May 1, 2023. *Id.* ¶ 6. Then Plaintiff was hired by a different employer as a surgery scheduler—a substantially equivalent position—at the hourly rate of $16 for around 40-hours per week. *Id.* Plaintiff remained in the surgery scheduler position until October 1, 2024. *Id.* ¶ 7. Plaintiff has since retired, and she is not seeking any lost wages after October 1, 2024. *Id.* ¶ 18.

Plaintiff's affidavit provides calculations to support her request for lost wages in the amount of $14,687.50. Dkt. 30-1 ¶¶ 9–17. That amount accounts for her post-termination unemployment and then her employment at $16 per hour. By failing to file a responsive pleading or otherwise challenge the allegations, Defendant has failed to meet its burden of proving Plaintiff did not mitigate her damages or otherwise is not entitled to lost wages. Thus, I recommend the Court award Plaintiff economic compensatory

damages in the amount of $14,687.50 for her lost wages on both claims.

### 2.    Non-economic Compensatory Damages

As to non-economic compensatory damages, Plaintiff seeks damages in the amount of $100,000.00 for emotional distress. Under the ADA, compensatory damages can be recovered for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). Under the FCRA, compensatory damages can be recovered for "mental anguish, loss of dignity, and any other intangible injuries." Fla. Stat. § 760.11(5).

"[G]eneral compensatory damages, as opposed to special damages, need not be proven with a high degree of specificity." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999). "Compensatory damages 'may be inferred from the circumstances as well as proved by the testimony.'" *Id.* (citation omitted). A plaintiff's own testimony about her emotional distress may be enough, but evidentiary shortcomings are relevant in determining the compensatory damages ultimately awarded. *Id.*; *see also Garrett v. Dep't of Corr.*, 589 F. Supp. 2d 1289, 1301 (M.D. Fla. 2007).

At the hearing, Plaintiff provided credible testimony to support her request for non-economic compensatory damages. Plaintiff confirmed the accuracy of the entire Amended Complaint—including her medical history of heart issues, her hiring

and work for Defendant, the circumstances of her termination, and the effect her termination had on her and her family.

To start, Plaintiff discussed how she learned of the referral specialist position with Defendant through a website and was subsequently hired after attending an open house where she interacted with Defendant's office manager and human resources ("HR") manager. Plaintiff testified that she received praise for how quickly she picked up her duties. Defendant's office manager and HR manager both frequently checked in on Plaintiff and were consistently happy with her performance. In her 90-day review, Plaintiff was told everyone was very happy with her performance, she was working well, and her benefits would begin on January 31.

After the review (but before her benefits began), Plaintiff was hospitalized. Plaintiff was at work on a Thursday. Late in the day, she experienced chest pain and shortness of breath. She called her doctor and was directed to go to the hospital. Plaintiff spoke with the office manager, who encouraged her leave and get checked out. Plaintiff was admitted and had many tests performed. Plaintiff was discharged on Saturday and informed the office manager and HR manager that she was doing better and would be back at work on Monday to which they responded that was great news. She missed less than two days of work.

When Plaintiff returned to work, things were different. The office manager and HR manager stopped visiting her office. Plaintiff testified no one interacted with her or asked how she was doing.

Plaintiff brought her medications with her to work each day. She kept in a plastic bag that stuck out of her purse. The medications needed to be taken at various times throughout the day to manage her heart condition. Once Defendant's HR manger stopped by Plaintiff's office, she asked why Plaintiff was in the hospital. Plaintiff replied it was because of her heart condition. The HR manager then commented on how many medications Plaintiff had with her.

About a week after that interaction, the HR manager stopped by Plaintiff's office once more. The manager informed Plaintiff that she was terminated. Plaintiff testified there had been no remarks about her performance or anything related to her work. Plaintiff was told she was being terminated because Defendant was eliminating her position. But then the next day, Plaintiff saw a posting on the same website advertising an opening for her position. She learned later Defendant hired someone to fill her position.

Plaintiff testified that her termination had a significant impact on her and her family. She had been living in an apartment with her daughter and nine-year-old granddaughter. Plaintiff's daughter had lost her job, and Plaintiff was supporting all of them. Without a steady income, Plaintiff and her daughter struggled to afford rent. Some family members provided her with money for a month's rent. But afterward, she could not make ends meet and was evicted. Plaintiff sold her furniture. Her car was repossessed.

After the eviction, Plaintiff did not know where she, her daughter, and her granddaughter could live. But, after a stressful

search, she found a charitable organization that paid for a hotel. They lived at a hotel for around four months. During that time, Plaintiff found a new job and secured permanent housing. She testified it was very hard to find housing because of the eviction. Also, while at the hotel, they all got sick and had to eat what they could. Plaintiff testified it was a horrible time and that she had never been in a situation like that in her life.

Plaintiff testified that she believed Defendant did not care at all about the impact the termination would have on her and her family. She had been told she was a good employee who did good work. The last thing she expected was to be terminated. Plaintiff feels like Defendant disregarded her rights as an employee and seeks $100,000.00 in non-economic compensatory damages for the emotional distress she suffered.

Plaintiff pled compensatory damages under both the ADA and the FCRA. I find that she is entitled to an award of $100,000.00 in non-economic damages, consisting of $50,000.00 in damages on the ADA claim and $50,000.00 on the FCRA claim.[3] The evidence

---

[3] Compensatory damages are available under both the ADA and FCRA. *See* 42 U.S.C. § 1981a(b)(3); Fla. Stat. § 760.11(5). But the amount Plaintiff can recover under the ADA is capped. *See* 42 U.S.C. § 1981a(b)(3)(A)–(D). Because the record evidence established that Defendant employed around 30 to 35 people, an award for compensatory damages—excluding any backpay and including any punitive damages award—under the ADA is capped at $50,000.00. *See* 42 U.S.C. § 1981a(b)(2), (b)(3)(A) (setting cap of

establishes that Plaintiff was a good employee who received nothing but positive feedback. Defendant terminated Plaintiff about a week after she was hospitalized and after it learned she had a heart condition. Defendant lied to Plaintiff about the elimination of her position, thereby demonstrating Plaintiff's termination was pretextual. Plaintiff then endured hardship after hardship, losing her home, her car, and her furniture.

### 3.    Punitive Damages

And as to punitive damages, Plaintiff seeks damages in the amount of $100,000.00. Under the FCRA, it is unclear whether willful and wanton conduct on the part of the employer is necessary or if negligence is sufficient for an award of punitive damages. *See Speedway Super Am., LLC v. Dupont*, 933 So. 2d 75, 89–90 (Fla. 5th DCA 2006) (noting lack of clarity as to the standard).[4] The

---

$50,000.00 for defendants with more than 14 but fewer than 101 employees).

[4] Some courts apply the ADA punitive damages standard—which is the Title VII standard—to claims for punitive damages under the FCRA. *See Myers v. Winn-Dixie Stores, Inc.*, No. 8:10-cv-1987, 2012 WL 529552 (M.D. Fla. Feb. 10, 2012) ("Whether punitive damages pursuant to Ch. 760.11(5), Florida Statutes, are available for alleged disability discrimination is determined under Title VII standards."); *Hipp v. Liberty Nat. Life Ins. Co.*, 65 F. Supp. 2d 1314 (M.D. Fla. 1999), *aff'd in part, rev'd in part on other grounds*, 252 F.3d 1208 (11th Cir. 2001). I consider a punitive damages award for the FCRA claim only because I recommend the Court award Plaintiff the maximum permitted under the ADA for her non-economic compensatory damages.

- 19 -

statute caps punitive damages at $100,000.00. *See* Fla. Stat. § 760.11(5).

In the Amended Complaint, Plaintiff alleges that "Defendant has, with malice or reckless indifference, violated the dictates of the FCRA by intentionally discriminating against Plaintiff due to an actual or perceived handicap." Dkt. 25 ¶¶ 40. The Court must take as true the uncontested factual allegations in the Amended Complaint. *See Enpat, Inc. v. Budnic*, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("The effect of the entry of a default is that all of the factual allegations in the complaint are taken as true, save for the amount of unspecified damages.")); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

Considering the allegations in the Amended Complaint and Plaintiff's credible testimony, I find an award of punitive damages is warranted. According to Plaintiff's credible testimony, Defendant terminated Plaintiff on January 30—shortly after her hospitalization and the disclosing of her heart condition and the day before her benefits would begin. It is reasonable to infer from this timeline that Plaintiff's termination was because Defendant did not wish to incur the costs of providing benefits to Plaintiff. Defendant's lie to Plaintiff about the reason for her termination, and it's subsequent hiring of a replacement, reinforces this inference. That a business in the health

care field would terminate a new hire with a known heart condition due to the cost of health benefits is unconscionable. No matter how the standard is framed, such conduct warrants the imposition of punitive damages.

Turning to the amount of punitive damages that are appropriate, the Supreme Court has refused to "draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable" ratio of punitive to compensatory damages. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 582 (1996). But the Supreme Court observed that "the median ratio of punitive to compensatory award has remained less than 1:1" and found such a ratio to be a fair upper limit in some circumstances. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 497–99, 512–13 (2008). Likewise, a 1:1 ratio of non-economic compensatory to punitive damages is appropriate here. Given the recommendation that Plaintiff be awarded $114,687.50 in compensatory damages, I find that a $100,000 award under the FCRA is appropriate to meet the punitive goals of "retribution and deterring harmful conduct." *Id.* at 492.

*   *   *   *   *

In sum, Plaintiff has provided sufficient evidence to support an award of $14,687.50 in economic compensatory damages, $100,000.00 in non-economic compensatory damages, and $100,000.00 in punitive damages, for a total of $214,687.50. *See Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999)

("Once a defendant is found liable for the plaintiff's injury, the District Court has a great deal of discretion in deciding the level of damages to be awarded.").

### E.    Attorney's Fees

Plaintiff also seeks an award of attorney's fees and costs under the ADA and FCRA. Dkt. 26 at 10. Plaintiff did not provide any information regarding her counsel's hours or rate as she requests that "the Court defer the determination of the amount of fees and costs until after the damages hearing so that Plaintiff's undersigned counsel may then properly calculate the total number of hours expended on prosecuting this case to conclusion." Dkt. 26 at 10.

As I recommend the Court grant default judgment in Plaintiff's favor, she is the prevailing party and so is entitled to attorney's fees and costs. *See* 42 U.S.C. § 12205. Thus, I respectfully recommend the Court find Plaintiff is entitled to an award of attorney's fees and require her to file a supplemental motion that complies with the requirements of Local Rule 7.01(c) within 45 days of the entry of judgment.[5]

## IV.    RECOMMENDATION

Accordingly, I respectfully **RECOMMEND** the Court:

---

[5] If Plaintiff intends to seek *taxable* costs under 28 U.S.C. § 1920, she should complete the appropriate form (that is, Form AO 133) and use the procedure set forth in Federal Rule of Civil Procedure 54(d).

    1.    **GRANT** Plaintiff's Renewed Motion for Entry of Default Judgment (Dkt. 26);

    2.    **DIRECT** the Clerk of Court to enter default judgment in favor of Plaintiff and against Defendant;

    3.    **AWARD** Plaintiff $214,687.50 in damages; and

    4.    **DIRECT** Plaintiff to file a supplemental motion on amount of attorney's fees and related non-taxable costs within forty-five days of the Order ruling on this Report and Recommendation in accordance with Local Rule 7.01(c).

## <u>Notice to Parties</u>

"Within 14 days after being served with a copy of [a report and recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters review by the district judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

    **ENTERED** in Orlando, Florida, on May 15, 2025.

 

_____
ROBERT M. NORWAY
*United States Magistrate Judge*

Copies to:

Hon. Gregory A. Presnell

Counsel of Record